# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAY BALLADAREZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 1:20-cv-957-LHR- |
| | § | HBK |
| VITRO FLAT GLASS LLC, a Delaware | § | |
| Limited Liability Corporation, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM AND OPINION

Ray Balladarez was working for a glass manufacturer, Vitro Flat Glass LLC, when he fell from a seven-foot ladder during an equipment inspection. His injuries prevented him from working without accommodations. After investigating, Vitro concluded that Balladarez was responsible for his injuries because he had failed to discover a defect in the ladder's safety gate while performing an inspection days earlier. Vitro gave Balladarez a disciplinary write-up based on his inadequate inspection. When Balladarez learned of the write-up, he threw a water bottle to the ground and called the write-up "bullshit." Vitro terminated Balladarez's employment for, in Vitro's words, his "violent outburst." Balladarez sued, claiming wrongful termination, disability discrimination, retaliation, and failure to pay or give breaks as required under the law. Based on the pleadings, the motion and response, the record, and the applicable law, the motion is granted in part and denied in part. The reasons are stated below.

I.      **Background**

A.      **Balladarez's Employment and Termination**

Vitro Flat Glass LLC manufactures glass at its facility in Fresno County, California. (Docket Entry No. 25 at ¶¶ 1–2).  In January 2014, Ray Balladarez began working as a lead maintenance technician in the Fresno facility.  (Docket Entry No. 27 at ¶¶ 2–3).  Balladarez's job duties included "troubleshooting problems with mechanical and electrical systems, coordination with managers, working with general maintenance technicians, and doing preventative maintenance." (*Id.* at ¶ 3).

On March 15, 2020, Balladarez was injured at work.  He had climbed a ladder to reach a soda ash platform seven feet off the ground.  (Docket Entry No. 23-4 at 41–42).  The ladder was gated at the top of the platform to prevent workers from falling off the platform.  (*Id.* at 43).  When Balladarez opened the gate and began to climb down the ladder, the gate detached from its hinges, causing Balladarez to fall backwards off the ladder.  (*Id.* at 43, 46).  Balladarez suffered a concussion, fractured scapula, and various muscle tears, requiring surgery.  (Docket Entry No. 27 at ¶ 7).

Balladarez took three days off work after his injury.  (Docket Entry No. 23-4 at 47).  When he returned on March 19, 2020, Vitro accommodated the work restrictions recommended by Balladarez's treating physician, including no lifting over ten pounds.  (Docket Entry No. 23-6). Balladarez met with a Vitro human resources employee, Connie Cuellar, and maintenance supervisor, Ron Casey.  (Docket Entry No. 27 at ¶ 9).  Balladarez asked that a "general maintenance assistant" be assigned to help him perform the physical tasks his job required.  (*Id.*). Cuellar and Casey denied the request, informing Balladarez that they would try to get "volunteers"

to help him on weekdays, but that he would have no assistance when he worked on weekends. (*Id.*).

After his meeting with Cuellar and Casey, Balladarez complained to environmental manager Jason Zander and union representative Anthony Garcia about the gate that had caused his injury. (Docket Entry No. 27 at ¶ 13). He complained that the gate had become detached because of a faulty design. (*Id.*). Balladarez had presented the same complaint to Zander roughly a year before the accident. (*Id.*).

On March 24, 2020, Vitro issued Balladarez a "disciplinary action" based on its investigation into the March 15 accident. (Docket Entry No. 23-6). Vitro determined that Balladarez's injury had resulted "from a ladder gate that wasn't properly installed." (*Id.*). Vitro found that Balladarez had conducted an annual maintenance inspection on the ladder and gate a few days before the incident but had not completed the inspection or noted any issues. (*Id.*). The disciplinary action notification stated that "[v]iolation of the Company's policies and procedures will not be tolerated; **any further violations will result in disciplinary actions up to and including discharge.**" (*Id.*).

When Balladarez was presented with the disciplinary action notice by maintenance supervisor Ken Emery, he told Emery "I'm not signing that. I feel sick. I'm going home." (Docket Entry No. 27 at ¶ 16). After leaving Emery's office, Balladarez threw his water bottle on the ground in frustration. (*Id.*). Balladarez then went to the human resources office, where he told Zander and human resources generalist Ashwin Kaur that he felt he was being "improperly blamed" for the gate's design defect. (*Id.* at ¶ 17). Emery then entered the office and told Balladarez he could go home. (*Id.* at ¶ 18). In response, Balladarez said "man, this is bullshit." (*Id.*). Balladarez then went home. (*Id.*).

On March 27, 2020, Vitro terminated Balladarez's employment based on:

> A hostile encounter with another party or parties, resulting in a physical struggle or contact (fighting), or a verbal altercation using obscene, abusive, hostile, or threatening language or gestures, engaging in malicious gossip or immoral behavior, or other such conduct that interferes with or adversely affects co-workers' morale or the performance of their job.

(Docket Entry No. 23-6 at 33).

In April 2020, Balladarez filed a complaint with the California Department of Fair Employment and Housing, alleging that Vitro discriminated, harassed, and retaliated against him based on his disability and request for disability accommodations. (Docket Entry No. 23-4 at 18). The Department declined to proceed against Vitro and issued Balladarez a "right to sue" notice. (*Id.* at 15).

In May 2020, Balladarez sued Vitro in Fresno County Superior Court, bringing nine causes of action:

1. Wrongful termination in violation of public policy;

2. Whistleblower wrongful termination in violation of California Labor Code § 1102.5;

3. Disability and medical condition discrimination and retaliation in violation of California Government Code § 12940(a);

4. Unlawful retaliation in violation of California Government Code § 12940(n);

5. Failure to investigate and prevent or remedy discrimination and retaliation in violation of California Government Code § 12940(k);

6. Failure to provide meal and rest periods in violation of California Labor Code § 226.7 and industrial welfare commission regulations;

7. Failure to pay overtime compensation under California Industrial Welfare Commission orders and California Labor Code §§ 510, 512, 558, 1194, and 1198;

8.  Failure to compensate for all hours worked in violation of California Industrial Welfare Commission order and California Labor Code § 1198; and

9.  Waiting time penalties under California Labor Code § 203.

(Docket Entry No. 23-4 at 7–13).

### B.  The *Romero* Class Action

In October 2020, Aaron Romero, a former Vitro employee, filed a class action lawsuit against Vitro under the California Labor Code Private Attorneys General Act of 2004.  Romero alleged that Vitro violated the Act by: (1) failing to pay straight and overtime wages; (2) failing to provide meal periods; (3) failing to authorize and permit rest periods; (4) failing to comply with itemized employee wage statement provisions; (5) failing to pay all wages at the time of termination of employment; (6) failing to adopt a compliant sick pay and paid time off policy; and (7) violating California's Unfair Competition Law.  (Docket Entry No. 23-2 at ¶¶ 9, 13).

In June 2022, the *Romero* class action settled.  (Docket Entry No. 23-2 at 162).  The class included Balladarez.  As a class member, Balladarez was sent a notice of the pendency of the class action and the proposed settlement.  He neither objected nor opted out.  (Docket Entry No. 23-5 at 7).  In August 2022, Balladarez received and endorsed a check for $4,294.39 as his settlement payment.  (Docket Entry No. 23-5 at 19).  Under the settlement agreement, class members released all claims against Vitro based on "the same facts alleged in the Action," including:

> (1) Failure to Pay All Straight Time Wages; (2) Failure to Pay All Overtime Wages; (3) Failure to Provide Meal Periods (Lab. Code §§ 226.7, 512, IWC Wage Order No. 1- 2001(11); Cal. Code Regs., tit. 8 § 11090); (4) Failure to Authorize and Permit Rest Periods (Lab. Code § 226.7; IWC Wage Order No. 1-2001(12)); Cal. Code Regs. tit. 8 § 11090); (5) Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions (Lab. Code §§ 226, 1174, 1175); (6) Failure to Pay All Wages Due at the Time of Termination of Employment (Lab. Code §§ 201-203); (7) Failure to Adopt a Compliant Sick Pay/Paid Time Off Policy (Lab. Code §§ 233, 234, 246); (8) Violation of Unfair Competition Law (Bus. &

Prof. Code §§ 17200, et seq.); and (9) Violations of the Private Attorneys General Act, Labor Code §§ 2699, *et seq.*

(*Id.* at 9).

## C.     The Procedural History

In July 2020, Vitro removed this action to federal court based on diversity jurisdiction. (Docket Entry No. 1).  In September 2022, Vitro moved for summary judgment.  (Docket Entry No. 23).  Balladarez filed a response, (Docket Entry No. 26), and Vitro replied, (Docket Entry No. 29).  Vitro also lodged evidentiary objections to the declaration Balladarez filed in opposition to Vitro's summary judgment motion, (Docket Entry No. 31), and asked the court to take judicial notice of certain public filings.  (Docket Entry No. 23).

In April 2024, the case was assigned to this court, which is temporarily performing judicial duties in the United States District Court for the Eastern District of California to ease the backlog in that overburdened district.  (Docket Entry No. 40).  The pending motions are ripe for resolution.

Based on the record, the briefs, and the applicable law, Vitro's objections to Balladarez's declaration are sustained in part and overruled in part; Vitro's request for judicial notice is granted; and Vitro's motion for summary judgment is granted in part and denied in part.  The reasons are set out below.

## II.     The Rule 56 Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L.Ed.2d 265

(1986).  If the moving party meets its burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial."  *Galen*, 477 F.3d at 658.  The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits."  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation marks and quoting reference omitted) (alteration adopted).  The court "must review the evidence submitted in support of each cross-motion."  *Id.*

## III.    Analysis

First, the court addresses Vitro's evidentiary objections to Balladarez's declaration.  Second, the court takes up Vitro's request for judicial notice.  Third, the court reaches the merits of Vitro's summary judgment motion.

### A.    Vitro's Evidentiary Objections

Vitro objects to several paragraphs of Balladarez's declaration.  (Docket Entry No. 31).  Vitro objects to many of the declaration statements because they are not referred to in Balladarez's response brief.  Each objection on this ground is overruled because evidence need not be expressly referenced in a brief to be considered on summary judgment.  *See Centurion Med. Liab. Protective Risk Retention Group Inc. v. Gonzalez*, 296 F. Supp. 3d 1212, 1216 (C.D. Cal. 2017) ("[A] court may rely on materials in the record that neither party cited[.]").  The court addresses Vitro's other objections in turn.

Paragraph 4 of Balladarez's declaration states: "Write-ups were liberally given out by management at V[itro] to myself and other lead and general maintenance technicians.  To my

knowledge, they lasted a year prior to going off an employee's record." (Docket Entry No. 27 at ¶ 4). Vitro objects to this statement on the grounds that it is not supported by personal knowledge and is irrelevant. (Docket Entry No. 31 at 2). Vitro's objections are overruled. Balladarez's declaration establishes his personal knowledge as a lead maintenance technician at Vitro, and the frequency with which Vitro issued write-ups is relevant to Balladarez's claims.

Paragraph 4 of Balladarez's declaration states: "With respect to the 2016 write-up, Exhibit 'B' to the Cuellar Declaration regarding safety equipment, my comment to my supervisor, maintenance manager Ronald (Ron) Casey, 'write me up or suspend me, whatever' was not hostile." (Docket Entry No. 27 at ¶ 4). Vitro objects to this statement as irrelevant. (Docket Entry No. 31 at 2). Vitro's objection is overruled; whether Balladarez's statement was delivered in a hostile manner is relevant.

Paragraph 4 of Balladarez's declaration states: "Indeed, Ron Casey, the Union representative Mr. Williams, and I laughed about this response — and the fact that Ron had been watching me most of the time I was up and had never told me to get my arc protection gear on." (Docket Entry No. 31 at 3). Vitro objects to this statement as irrelevant. Vitro's objection is overruled. Whether Balladarez and the union representatives laughed when Balladarez said "write me up or suspend me, whatever," is relevant to whether the statement was delivered and received in a hostile manner.

Paragraph 4 of Balladarez's declaration states: "With respect to the 2018 write up, Exhibit 'C' to the Cuellar Declaration, the other lead maintenance technicians received these write ups." (Docket Entry No. 27 at ¶ 4). Vitro objects to this statement on the grounds that it is not supported by personal knowledge and is irrelevant. (Docket Entry No. 31 at 3). Vitro's objections are overruled for reasons already stated in the ruling on similar objections.

Paragraph 5 of Balladarez's declaration states: "Throughout my employment with V[itro], there was never sufficient time allotted for lead maintenance technicians to complete [preventative maintenance] tasks.  V[itro] simply refused to dedicate sufficient hours and manpower to permit completion of [preventative maintenance], for instance, by increasing the number of leads, delegating these tasks to others, or permitting additional overtime to ensure completion of [preventative maintenance].  V[itro] management had been informed of these problems on multiple occasions over the years, but again, did nothing to rectify the situation."  (Docket Entry No. 27 at ¶ 5).  Vitro objects to this statement on the grounds that it is not supported by personal knowledge and is irrelevant.  (Docket Entry No. 31 at 3–4).  Vitro's objections are overruled for the reasons given in the ruling on similar objections.

Paragraph 6 of Balladarez's declaration states: "The problem wasn't with the ladder, but rather, with the design and construction of the gate."  (Docket Entry No. 27 at ¶ 6).  Vitro objects to this statement on the grounds that it is not supported by personal knowledge and is irrelevant.  (Docket Entry No. 31 at 4).  Vitro's objections are overruled.  The record shows that Balladarez had the requisite personal knowledge; it was part of his duties as a lead maintenance technician to identify defects with the ladders and gates in Vitro's production facility.  And whether the gate had a design defect is relevant to Balladarez's claims and Vitro's proffered legitimate explanations for its disciplinary actions.

Paragraph 7 of Balladarez's declaration states: "As a result of the fall, I suffered a concussion, a hairline fracture of the scapula, various torn muscles in my arm/should [*sic*] area, which required surgery.  I was unable to work for more than a year and required surgery.  I had continued headaches and residual effects from the head injury.  My arm and shoulder area turned black from the muscle damage."  (Docket Entry No. 27 at ¶ 7).  Vitro objects to this statement on

the grounds that it is not supported by personal knowledge and is irrelevant. (Docket Entry No. 31 at 4–5). Vitro's objections are overruled for reasons already stated in the ruling on similar objections.

Paragraph 7 of Balladarez's declaration states: "While dazed and injured, and before my wife got to the scene, V[itro] made me sign some sort of waiver paperwork." (Docket Entry No. 27 at ¶ 7). Vitro objects to this statement as irrelevant. (Docket Entry No. 31 at 5). Vitro's objection is sustained. Balladarez has made no argument, and identified no evidence, that would make the unidentified "waiver paperwork" relevant to the issues in this case.

Paragraph 8 of Balladarez's declaration states: "The next day, March 16, 2020, V[itro] called me and required that I leave my house and go to V[itro]'s Worker's Compensation doctor, who contradicted the emergency room physician and stated I could return to work immediately, and also asked me to remove the sling placed by the ER doctor on my injured arm." (Docket Entry No. 27 at ¶ 8). Vitro objects to this statement as hearsay. (Docket Entry No. 31 at 5–6). Vitro's objection is overruled. The alleged statement by Vitro is admissible as an opposing party statement, FED. R. EVID. 801(d)(2), and the alleged statement by the Worker's Compensation doctor is apparently not offered for the truth of the matter asserted, *id.* Rule 801(c).

Paragraph 8 of Balladarez's declaration states: "I complained to V[itro] HR employee Connie Cuellar about having to leave my bed at home to go to this Worker's Compensation doctor, and I was allowed to continue my bed rest for two days after the trip to V[itro]'s Worker's Compensation doctor." (Docket Entry No. 27 at ¶ 8). Vitro objects to this statement as irrelevant. (Docket Entry No. 31 at 6). Vitro's objection is overruled for reasons already stated.

Paragraph 9 of Balladarez's declaration states: "Other lead maintenance technicians, such as Jim Bixman, Ken Emery and Wade Amerai had been given general maintenance technicians to

help them after injuries." (Docket Entry No. 27 at ¶ 9). Vitro objects to this statement on the grounds that it is not supported by personal knowledge and is irrelevant. (Docket Entry No. 31 at 6). Vitro's objection based on the lack of personal knowledge is overruled. Balladarez has shown a sufficient basis for his personal knowledge about accommodations Vitro provided to other injured employees and has identified those employees by name. Whether other injured employees had been assigned general maintenance technicians to help them is relevant to evaluating Vitro's proffered legitimate reason for denying Balladarez's request for accommodations.

Paragraph 9 of Balladarez's declaration states: "Without a general maintenance technician to assist me, as provided other leads, I was destined for failure at my job." (Docket Entry No. 27 at ¶ 9). Vitro objects to this statement on the grounds that it is not supported by personal knowledge and is irrelevant. (Docket Entry No. 31 at 6–7). Vitro's objections are overruled for reasons already stated.

Paragraph 9 of Balladarez's declaration states: "No mention was made for my request for a general maintenance technician as had been allotted to other injured leads, all of whom were white males, and which I needed to complete my job duties until healed." (Docket Entry No. 27 at ¶ 9). Vitro objects to this statement on the grounds that it is not supported by personal knowledge and is irrelevant. (Docket Entry No. 31 at 7). Vitro's objection is overruled for reasons already stated.

Paragraph 10 of Balladarez's declaration states: "Luis Hernandez informed me near the end of the first night that he did not feel comfortable working with me in my physical condition without an assisting general maintenance technician because I was unable to perform my physical duties, and to help him in the event of an emergency." (Docket Entry No. 27 at ¶ 10). Vitro objects

to this statement on hearsay and relevance grounds.  (Docket Entry No. 31 at 7).  Vitro's hearsay objection is sustained.

Paragraph 10 of Balladarez's declaration states: "With only one coworker and no general maintenance assistance, it was impossible to delegate my tasks and to complete my job effectively, or even at all.  It was still my job, as long as I was at work, to complete my duties, and I could not without the general maintenance technician assistant that other leads had been assigned while injured."  (Docket Entry No. 27 at ¶ 10).  Vitro objects to this statement on the grounds that it is not supported by personal knowledge and is irrelevant.  (Docket Entry No. 31 at 7).  Vitro's objections are overruled for reasons already stated.

Paragraph 11 of Balladarez's declaration states: "The purpose of a ladder [preventative maintenance check] such as this is to look for loose bolts or parts in the ladder or gate, and a firm clasp of safety latch.  It is not to evaluate the design of the gate."  (Docket Entry No. 27 at ¶ 11).  Vitro objects to this statement on the ground that it is not supported by personal knowledge.  (Docket Entry No. 31 at 7).  Vitro's objection is overruled.  Balladarez's declaration demonstrates sufficient personal knowledge for the statement, based on his experience as a lead maintenance technician at Vitro.

Paragraph 11 of Balladarez's declaration states: "This particular gate that came off in my hands had been installed and approved for years prior to my doing the ladder PM in 2020."  (Docket Entry No. 27 at ¶ 11).  Vitro objects to this statement on the ground that it is not supported by personal knowledge.  (Docket Entry No. 31 at 8).  Vitro's objection is overruled.  Balladarez's declaration shows that he had personal knowledge from working as a lead maintenance technician in the Vitro facility since 2014.  (Docket Entry No. 27 at ¶ 2).

Paragraph 12 of Balladarez's declaration states: "I made complaints about the safety of the gates, both prior to and after the accident."  (Docket Entry No. 27 at ¶ 12).  Vitro objects to this statement on the ground that it contradicts Balladarez's prior sworn deposition testimony.  (Docket Entry No. 31 at 8).  Before evaluating this objection, it is necessary to set out the law in the Ninth Circuit on the sham affidavit doctrine.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by a affidavit contradicting his prior deposition testimony."  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).  This rule "prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  *Id.* (quotation marks omitted and alterations adopted).

However, the sham affidavit doctrine "should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment."  *Id.*  (quotation marks omitted).  A district court should not exclude a declaration under the rule without determining that the contradiction is a sham, and that the inconsistency between the party's deposition testimony and subsequent affidavit is clear and unambiguous.  *Id.*  A district court "may find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember."  *Id.*  But "newly remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham."  *Id.* at 1081.  An affidavit is not a sham if "the witness was confused at th[e] time of the earlier testimony and provides an explanation for the confusion."  *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 961 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods,*

*Inc.*, 674 Fed. App'x. 654 (9th Cir. 2017) *and aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).

Vitro argues that Balladarez's statement in his declaration that he "made complaints about the safety of the gates, both prior to and after the accident" should be stricken.  Vitro contends that this statement contradicts Balladarez's prior statement in his deposition that "the only time he complained about the ladders during his employment was about one year prior to the end of his employment, when he told Environmental Manager, Mr. Zander, that ladders in a separate area of the plan should have safety guards."  (Docket Entry No. 29 at 4).

The court finds that the sham affidavit doctrine does not apply because Balladarez has provided a reasonable explanation that he was confused at the time he gave his deposition answer.  In the deposition, Vitro's attorney asked Balladarez whether he had ever complained about the ladders or safety gates while employed at Vitro, other than the complaint he made one year prior to his termination.  (Docket Entry No. 23-4 at 66–67).  Balladarez replied "I don't believe so."  (*Id.* at 67).  Balladarez's attorney then asked a leading question: "You did complain to Jason Zander about the safety gate failing; didn't you? . . . After you fell?"  (*Id.* at 67).  Balladarez responded "Yeah, after . . . That's why they interviewed me before they would have released me to go back to work."  (*Id.*).  Balladarez explained in his declaration in opposition to summary judgment that when he was responding to opposing counsel's deposition question, "I answered him about the *first* time that I complained.  When my attorney attempted to flesh out the additional complaints through follow up questioning, [Vitro's attorney] became angry and terminated the deposition."  (Docket Entry No. 27 at 7).  In light of this explanation, the apparent inconsistency between Balladarez's deposition testimony and declaration is not "clear and ambiguous."  Vitro's objection is overruled.

Paragraph 12 of Balladarez's declaration states: "Jason Zander informed me that he had 'looked into' the matter, and that, in his view, the gates were Cal-OSHA compliant." (Docket Entry No. 27 at ¶ 12). Vitro objects to this statement as hearsay. (Docket Entry No. 31 at 8). Vitro's objection is overruled. The record shows that Zander worked for Vitro as an "Environmental Manager." (Docket Entry No. 23-10 at ¶ 1). His job duties included "conducting investigations into safety issues." (*Id.* at ¶ 2). Zander's statement that he had determined that the gates were "Cal-OSHA compliant" is an opposing party statement. *See* FED. R. EVID. 801(d)(2).

Paragraph 12 of Balladarez's declaration states: "I also spoke to Steve Andersen, a senior team maintenance lead, in February 2020, making these same complaints." (Docket Entry No. 27 at ¶ 12). Vitro objects to this statement on the ground that it contradicts Balladarez's prior sworn deposition testimony, "wherein he testified that the only complaint he made regarding the safety gates was to Jason Zander about one year prior to the end of his employment." (Docket Entry No. 31 at 8–9). Vitro's objection has merit. Balladarez stated in his deposition that he complained to Zander roughly "a year prior to me leaving"—*i.e.*, around March 2019. (Docket Entry No. 23-4 at 66). He then stated he did not believe he made any other complaints about the ladders or safety gates while employed at Vitro. (*Id.* at 67). As explained above, Balladarez has provided a reasonable explanation for failing to mention the post-accident complaint to Zander in his deposition. But he has not explained his failure to mention the alleged February 2020 complaint to Andersen referred to in his declaration. The reference to that complaint is stricken from the declaration. *Yeager*, 693 F.3d at 1080 (a district court "may find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember").

Paragraph 12 of Balladarez's declaration states: "This very design problem with the gates is what caused my fall and injuries." (Docket Entry No. 27 at ¶ 12). Vitro objects to this statement

on the grounds that it is made without personal knowledge and is irrelevant.  (Docket Entry No. 31 at 9).  Vitro's objections are overruled.  The record supports Balladarez's personal knowledge "regarding the design of the safety gate[s]," which he had worked with for six years.  And the design of the gate is relevant to whether Balladarez caused his own injury by failing to properly inspect the gate, as Vitro contends.

Paragraph 13 of Balladarez's declaration states: "Following the meeting with Connie Cuellar and Ron Casey, in which they refused to accommodate me, despite my injuries, as they had other lead maintenance technicians, I went into a room and spoke with Jason Zander, Union representative Anthony Garcia, among other individuals."  (Docket Entry No. 27 at ¶ 13).  Vitro objects to this statement on the ground that it is made without personal knowledge and is irrelevant.  (Docket Entry No. 31 at 9).  Vitro's objections are overruled.  As explained, the record supports Balladarez's personal knowledge of accommodations received by other injured employees, which is relevant to Vitro's proffered explanations for its employment actions.

Paragraph 13 of Balladarez's declaration states: "During this meeting, I specifically told Jason Zander that the gate was unsafe and had caused my injury.  I noted that this was the same complaint I had previously made to Jason Zander himself . . . .  This was certainly a complaint about the gate design.  It had caused me serious injury."  (Docket Entry No. 31 at 9).  Vitro objects to this statement on the ground that it contradicts Balladarez's sworn deposition testimony and is made without personal knowledge.  (Docket Entry No. 31 at 9).  For reasons already explained, these objections are overruled.

Paragraph 14 of Balladarez's declaration states: "With respect to [preventative maintenance] inspections and reporting to V[itro], while I was employed, the practice was to complete as much of the [preventative maintenance] inspections as circumstances allowed, and

then to note whatever portion was not completed with a notation of 'incomplete.'  Management

would then return the [preventative maintenance report] if it was a priority.  The particular ladder

[preventative maintenance] in question had gone through multiple team leads."  (Docket Entry No.

27 at ¶ 14).  Vitro objects to this statement on the grounds that it is made without personal

knowledge and is irrelevant.  Vitro's objections are overruled.  The record shows Balladarez's

personal knowledge of Vitro's practices for completing and reviewing preventative maintenance

inspections.  The practice is relevant to the circumstances surrounding Balladarez's write-up and

termination.

Paragraph 15 of Balladarez's declaration states: "The write up indicates I was at fault for

failing to detect the design or installation problem with the gate that caused my injury . . . ."

(Docket Entry No. 27 at ¶ 15).  Vitro objects to this statement on the ground that it "misstates the

language displayed" in the write-up document itself.  (Docket Entry No. 31 at 10).  Vitro's

objection is overruled because it does not explain how Balladarez's declaration misstates the

document.

Paragraph 15 of Balladarez's declaration states:

> As set forth above, Ladder [preventative maintenance inspections] are strictly
> concerned with function and operation, not design defects such as the defect that
> caused my injury.  . . .  The reason for the gate malfunction was a design and
> installation issue, not a function or operation issue which would have been detected
> as part of a [preventative maintenance] inspection and report.  Further, it was
> standard practice during my employment at V[itro] to turn in [preventative
> maintenance] reports and simply mark "incomplete" for what could not be
> completed, which is what I did in this instance.  Lead maintenance mechanics did
> this regularly due to time and duty constraints during my employment at V[itro].
> Again, the portion of the write up that faulted me for turning in an "incomplete"
> [preventative maintenance inspection] was a pretext for terminating me following
> the injury and the denial of accommodation after I couldn't perform my duties
> following the injury.

(Docket Entry No. 27 at ¶ 15).  Vitro objects to this statement on the ground that it is not supported by personal knowledge and is irrelevant.  Vitro's objections are overruled for the reasons already stated.

Paragraph 15 of Balladarez's declaration states: "This write up was nothing more than an attempt to place the blame for my injury upon me following my prior complaints to Jason Zander, Steve Anderson and the to [*sic*] 'investigation' inquiry group to which I complained about the gate."  (Docket Entry No. 27 at ¶ 15).  Vitro objects to this statement on the ground that it contradicts Balladarez's sworn deposition testimony.  (Docket Entry No. 31 at 11).  Vitro's objection is sustained insofar as Balladarez refers to a prior complaint to Steve Anderson.  The objection is overruled as to the rest of the statement.

Paragraph 17 of Balladarez's declaration states: ". . . I never told anyone 'I want to fight someone.'  They never asked me to leave or expressed any concern about anything we discussed whatsoever."  (Docket Entry No. 27 at ¶ 17).  Vitro objects to this statement on the ground that it is made without personal knowledge "regarding the feelings or concern of Defendant's employees."  (Docket Entry No. 31 at 12).  Vitro's objection is overruled.  Balladarez's statement is fairly interpreted as a statement about what other Vitro employees said or did not say to Balladarez, not about what other employees felt.

Paragraph 18 of Balladarez's declaration states: "I went home to rest; my head was aching from my head injury the week prior."  (Docket Entry No. 27 at ¶ 18).  Vitro objects to this statement on relevance grounds.  (Docket Entry No. 31 at 12).  The objection is overruled because the reasons Balladarez left work are relevant to evaluating the circumstances of Vitro's proffered non-discriminatory explanation for his termination.

Paragraph 19 of Balladarez's declaration states: "I had anticipated [being terminated] since the prior week, because I had previously complained about the safety of the gates, the senior safety manager, Jason Zander, had done nothing about it, and I was now a liability to management." (Docket Entry No. 27 at ¶ 19).  Vitro objects to this statement on the ground that it is made without personal knowledge "regarding [Balladarez's] speculation regarding being a 'liability to management.'"  (Docket Entry No. 31 at 13).  Vitro's objection is sustained, only as to the portion referring to Balladarez's speculation about being a "liability to management."

Paragraph 19 of Balladarez's deposition states: "The ladder and flawed gate design was something that existed throughout the V[itro] facility, not just in the Batch House or the Lehr." (Docket Entry No. 27 at ¶ 19).  Vitro objects to this statement on the ground that it contradicts Balladarez's sworn deposition testimony that "the ladders in Lehr that he complained of are not the same as the ladder that he fell from on March 15, 2020." (Docket Entry No. 31 at 13).  Vitro's objection is overruled because there is no "clear and unambiguous" inconsistency.  Balladarez testified in his deposition that the ladder he fell from was "different" from the ladders in the Lehr. But it does not follow that the ladder he fell from did not have the same "flawed gate design" as the Lehr ladders he previously complained about.

Paragraph 19 of Balladarez's deposition states: "Moreover, the writing on the wall was clear when V[itro] management would not give me the same accommodation of a general maintenance technician as they had given other injured leads."  (Docket Entry No. 27 at ¶ 19). Vitro objects to this statement on the ground that it is made without personal knowledge and is irrelevant.  Vitro's objection is overruled for reasons already stated.

Paragraph 20 of Balladarez's deposition states: "An attorney for V[itro], Ryan Eddings, asked me about my complaints about the gates and ladders.  I answered him about the *first* time

that I complained.  When my attorney attempted to flesh out the additional complaints through follow up questioning, Mr. Eddings became angry and terminated the deposition.  As set forth above, I made more than one complaint about the problems with the gates." (Docket Entry No. 27 at ¶ 20).  Vitro objects to this statement on the ground that it contradicts Balladarez's previous deposition testimony, and that it references a deposition answer elicited by an improper leading question.  (Docket Entry No. 31 at 14).  The court overrules Vitro's sham-affidavit objection for reasons already stated.  Vitro's objection based on a leading deposition question is waived because Vitro's counsel did not properly object to the question during the deposition.  *See* FED. R. CIV. P. 32(d)(3).  Vitro's counsel stated that he was "shocked" and that he would "deal with this nonsense later."  (Docket Entry No. 23-4 at 67).  He then addressed Balladarez: "I asked you specifically, and you said 'No.'  And then your attorney asked you a leading question, and suddenly you remember one minute later?"   (*Id.*).   There was no objection "stated concisely in a nonargumentative and nonsuggestive manner."  FED. R. CIV. P. 30(c)(2).

Paragraph 21 of Balladarez's deposition states: "I did receive and cash a check for $4,294.39 [from the class action settlement], but this doesn't come close to what I am owed for V[itro]'s labor code violations that I suffered while employed."  (Docket Entry No. 27 at ¶ 21).  Vitro objects to this statement on the grounds that it is not supported by personal knowledge and is irrelevant.  (Docket Entry No. 31 at 14).  Vitro's objections are overruled.  Balladarez has personal knowledge about whether the settlement payment fully compensated him for his damages, and the settlement payment and damages Balladarez is claiming in this case are relevant.

Paragraph 22 of Balladarez's deposition states:

V[itro] ran the facility without the requisite level of maintenance staff needed.  As a result, I was often unable to take my rest periods, and lunch breaks were often never taken, taken late, or interrupted by necessary work to keep the facility functioning and prevent machinery breakdowns.  While official company policy

> was that meal and rest periods were to be taken, and taken in a timely manner, maintenance technicians were expected to maintain our machines regardless of the meal and rest period requirements to prevent breakdowns and dangerous situations such as overheating or overloading of electrical equipment. V[itro] management knew about this situation and did nothing. It wasn't until near the end of my employment that we were told to notify a manager if we were unable to take our breaks.

(Docket Entry No. 27 at ¶ 22). Vitro objects to this statement on the ground that it is made without personal knowledge "regarding the staffing at [Vitro]'s facility or [Vitro]'s practices regarding meal and rest periods." (Docket Entry No. 31 at 15). Vitro's objection is overruled because the record supports Balladarez's personal knowledge of Vitro's staffing and meal and rest period practices as it affected him and employees working the same type of job at the facility; Balladarez had worked at the facility for six years. (Docket Entry No. 27 at ¶ 2).

Paragraph 22 of Balladarez's deposition continues: "I understand that is why V[itro] paid out the class action settlement in the *Romero* class action case." (*Id.* at ¶ 22). Vitro objects to this statement on the ground that it is made without personal knowledge "regarding the reasons for [Vitro]'s settlement of the *Romero* action." (Docket Entry No. 31 at 15). Vitro's objection is overruled. Balladarez stated that he "receive[d] and cash[ed] a check for $4,294.39" for the *Romero* class action settlement. (Docket Entry No. 27 at ¶ 21). He also received a "notice of pendency of class action and proposed settlement" explaining the *Romero* allegations and settlement. (Docket Entry No. 23-5 at 7–8).

In summary, Vitro's evidentiary objections are sustained, with the limitations set out above, as to paragraphs 7, 10, 19, and 15 of Balladarez's declaration. Those portions of the declaration are stricken from the summary judgment record. Vitro's other evidentiary objections are overruled.

**B.      Vitro's Requests for Judicial Notice**

Vitro asks the court to take judicial notice, under Federal Rule of Evidence 201, of: (1) Balladarez's April 2020 complaint to the National Labor Relations Board, (2) the declaration of David Mara, Esq., in support of the approval of the *Romero* class action settlement, (3) the order approving the *Romero* settlement, and (4) the order dismissing the *Romero* class action. (Docket Entry No. 23-2).

Balladarez does not object to Vitro's requests for judicial notice. The court finds that the documents are the type that may be judicially noticed under Rule 201, and grants Vitro's requests for judicial notice.

**C.      Whistleblower Wrongful Termination**

Section 1102.5(b) of the California Labor Code provides:

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

To establish a violation of § 1102.5(b), a plaintiff must show, by a preponderance of the evidence, that retaliation was a contributing factor in a challenged employment action. § 1102.6; *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 718 (2022). "[P]laintiffs may satisfy their burden of proving unlawful retaliation even when other, legitimate factors also contributed to the adverse action." *Id.* at 713–14. The burden then shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action for legitimate, independent reasons even had the plaintiff not engaged in protected activity. *Id.*; § 1102.6.

22

Vitro argues that summary judgment is appropriate on Balladarez's claim for whistleblower retaliation because: (1) Balladarez has not raised an issue of fact material to determining whether retaliation contributed to its decision to terminate his employment; and, (2) even if Balladarez could meet his initial burden, Vitro has demonstrated by clear and convincing evidence that it would have terminated Balladarez for legitimate, independent reasons.  (Docket Entry No. 23 at 17–18).

The court finds that Balladarez has raised factual disputes material to determining whether retaliation was a contributing factor in Vitro's termination of his employment.  The parties dispute whether Balladarez complained to Zander about the ladders and gates a year before and after the accident.  And the parties dispute whether Balladarez had "reasonable cause" to believe that the design problems he allegedly complained about amounted to a violation of Title 8 of the California Code of Regulations, which requires the "swinging gate[s]" on protective railing around certain ladders to "be capable of withstanding a force of at least 200 pounds applied vertically downward to the uppermost surface or railing member and horizontally outward at any point on the exit side of the ladder opening."  § 3212(a)(2)(B).  It is undisputed that Balladarez fell when the gate he was holding while climbing down a ladder became disconnected.  (Docket Entry No. 25 at ¶ 13).

By contrast, Vitro has not carried its burden to establish on summary judgment that, based on undisputed facts, it would have terminated Balladarez for legitimate, independent reasons.  Vitro argues that Balladarez was terminated "because of his violent and hostile behavior following the March 24, 2020 meeting."  (Docket Entry No. 23-1 at 18).  Whether Balladarez's reaction was "violent and hostile" is disputed.  Kaur reported that Balladarez shouted at Emery "fuck you" and "fuck this."  (Docket Entry No. 23-6 at 27).  Zander and Emery both reported that Balladarez shouted only "you're supposed to have our fucking back!"  (*Id.* at 29, 31).  Balladarez denies ever

saying "fuck you" or "fuck that," or that he "wanted to fight someone."  (Docket Entry No. 27 at

¶¶ 17–18).  He admits having said to Emery, "Man, this is bullshit."  (*Id.* at ¶ 18).  He also admits

throwing a water bottle to the ground outside Emery's office.  (Docket Entry No. 25 at ¶ 35).  This

undisputed evidence, taken together, does not establish a "violent and hostile" outburst sufficient

to find that, as a matter of law, it was the independent reason for his termination.

Vitro argues that Balladarez has failed to show that Vitro's "legitimate, non-retaliatory

reason for [Balladarez]'s termination was pretextual."  (Docket Entry No. 29 at 2).  But the

California Supreme Court has held that the *McDonnell-Douglas* burden-shifting framework, and

the associated burden of proving pretext, is not part of the § 1102.5(b) analysis.  *Lawson*, 12 Cal.

at 716.

Summary judgment is denied as to the § 1102.5(b) claim.

**D.     The FEHA Claims**

**1.     Section 12940(a)**

Section 12940(a) of the California Fair Employment and Housing Act (FEHA) makes it an

unlawful employment practice to discriminate against any person because of a physical disability.

CAL. GOV'T CODE § 12940(a).

A prima facie case for discrimination "on grounds of physical disability under the FEHA

requires [a] plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do

his job; and (3) he was subjected to adverse employment action because of his disability."  *Faust*

*v. California Portland Cement Co.*, 150 Cal. App. 4th 864, 886, 58 Cal. Rptr. 3d 729, 745 (2007).

The third element requires the plaintiff to show that discrimination was a substantial factor in the

adverse employment decision.  *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232, 294 P.3d 49,

66 (2013).

On a motion for summary judgment, "the plaintiff bears the burden of establishing a prima facie case of discrimination based upon physical disability, and the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action." *Faust*, 150 Cal. App. 4th at 886.  Once the employer has done so the plaintiff must "demonstrate pretext by showing that the employer's proffered explanation is unworthy of credence because it is 'internally inconsistent or otherwise not believable.'"  *Chisolm v. 7-Eleven, Inc.*, 383 F. Supp. 3d 1032, 1053 (S.D. Cal. 2019), *aff'd*, 814 Fed. App'x. 194 (9th Cir. 2020) (quoting *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000)).  When evidence of pretext is circumstantial, "the plaintiff must produce specific, substantial evidence of pretext." *Id.* (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)).  "[T]he employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and infer that the employer did not act for the non-discriminatory reason."  *Id.* (quoting *Morgan v. Regents of the Univ. of Cal.*, 88 Cal. App. 4th 52, 105 Cal. Rptr. 2d 652, 670 (2000)) (cleaned up).

Balladarez argues that Vitro discriminated against him because of a physical disability in violation of § 12940(a).  (Docket Entry No. 26 at 6).  Balladarez's brief contains only a single paragraph in support of his § 12940(a) claim:

> Plaintiff has shown that he suffered a workplace injury, but was able to complete the essential functions of his job just as other lead maintenance technicians in the past who had been injured, as they were allotted a general maintenance technician to assist.  V[itro] failed and refused to do so, in Plaintiff's words, "setting [him] up for failure."  Indeed, V[itro] asked for "volunteers" to help Plaintiff only on some days, but not on others.  In the case at bar, Plaintiff has submitted evidence from which reasonable jury could find in his favor under Government Code § 12940(a).

(Docket Entry No. 26 at 6).

Balladarez has failed to produce or point to evidence raising a genuine factual dispute material to determining whether his disability was a substantial motivating factor for Vitro's denial of his request for a general maintenance technician, March 24, 2020, disciplinary action for failing to complete his inspection of the ladders, or termination of his employment.  Balladarez has not submitted or pointed to evidence supporting a causal link between these employment actions and his disability.  *Compare Harris*, 56 Cal. 4th at 227–29 (summarizing cases in which discrimination was a "substantial motivating factor").  Balladarez stated in his declaration that Vitro had assigned general maintenance technicians to other lead maintenance technicians who had been injured and that these other lead maintenance technicians were all "white males."  (Docket Entry No. 27 at ¶ 9).  If anything, this evidence points away from disability as a substantial motivating factor and toward race, but Balladarez has not brought a race discrimination claim.

Summary judgment is appropriate dismissing Balladarez's disability discrimination claim under § 12940(a).

## 2.      Section 12940(h)

Section 12940(h) makes it an unlawful employment practice "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  "[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the

employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042, 116 P.3d 1123, 1130 (2005) (quotation marks and quoting reference omitted).

The causation standard for a retaliation claim under FEHA is the same as the standard for a discrimination claim: the plaintiff must show that his protected activity was a substantial motivating factor for the adverse employment action. *Alamo v. Practice Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 479, 161 Cal. Rptr. 3d 758, 769 (2013). This can be demonstrated through "[t]emporal proximity along with knowledge by the employer of the protected activity." *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1180 (C.D. Cal. 2013). "There is no bright-line rule about timing and, depending on the circumstances, even three to eight months from the time of the alleged protected activity to the time of the alleged retaliatory action can support an inference of retaliation." *Hicks v. Netflix, Inc.*, 472 F. Supp. 3d 763, 778 (C.D. Cal. 2020). The *McDonnell-Douglas* burden-shifting framework applies to retaliation claims under § 12940(h). *Yanowitz*, 36 Cal. 4th at 1042.

As a threshold matter, the court notes that Balladarez does not cite § 12940(h) in his complaint. Nonetheless, he alleges and argues that Vitro retaliated against him for his protected activity. (Docket Entry No. 1 at ¶¶ 24–28; Docket Entry No. 26 at 7). Vitro does not argue that Balladarez has not adequately pleaded a retaliation claim; the court treats the retaliation claim as properly presented.

Balladarez asserts that he engaged in activity protected by the FEHA "by requesting reasonable accommodation and engaging in the interactive process." (Docket Entry No. 26 at 7). It is not clear what adverse employment action Balladarez alleges Vitro subjected him to in retaliation for his protected activity. The court assumes, as Vitro does, that the underlying adverse employment actions are the March 24, 2020, disciplinary action and Balladarez's termination.

(Docket Entry No. 29 at 7–8).  There is no dispute that Vitro knew that Balladarez had requested a reasonable accommodation, and that this request constitutes protected activity under the FEHA. (*Id.*).  And because the allegedly adverse employment actions followed "on the heels" of Balladarez's accommodation request, Balladarez has established a *prima facie* causal connection. *See Day*, 930 F. Supp. 2d at 1181; *Hicks*, 472 F. Supp. 3d at 779 (finding a *prima facie* showing of a causal connection when "fewer than six days elapsed" between protected activity and adverse actions).

To withstand summary judgment, Balladarez must point to evidence showing that Vitro's proffered explanations for the challenged employment actions are a pretext for retaliation.  Vitro asserts that the March 24 disciplinary action was "solely based upon [Balladarez]'s failure to properly complete the preventative maintenance check on the ladders and gates." (Docket Entry No. 23-1 at 20).  Vitro asserts that Balladarez was terminated "because he responded to the March 24, 2020 write-up by throwing a water bottle on the ground, saying he wanted to fight someone, and hurling obscene comments at his supervisor."  (*Id.* at 20).

Balladarez argues that Vitro's explanation for the March 24 disciplinary action is pretextual because it was "standard practice" for lead maintenance technicians to "turn in [preventative maintenance] reports and simply mark 'incomplete' for what could not be completed," and that "[l]adder [preventative maintenance inspection]'s are strictly concerned with function and operation, not design defects such as the defect that caused [Balladarez's] injury." (Docket Entry No. 27 at ¶ 15).  Balladarez argues that Vitro's explanation for terminating him is pretextual because his reaction was not actually "violent."  (Docket Entry No. 26 at 2; Docket Entry No. 27 at ¶¶ 16–18).  He denies ever having said "fuck this" or "fuck you," or that he "want[ed] to fight someone," as Kaur and Casey had reported.  (Docket Entry No. 23-6 at 27, 31).

Balladarez has produced evidence that Vitro's explanation for the March 24 disciplinary action is pretext.  Balladarez's declaration statements that his failure to complete the preventative maintenance inspection was "standard practice," that the gate failed because of a design defect, and that it was not his job to report design defects, support an inference that Vitro's explanation is "unworthy of credence."  *Chisolm*, 383 F. Supp. 3d at 1053.

However, Balladarez has not raised a factual dispute as to whether Vitro's explanation for terminating him is pretextual.   The evidence is undisputed that when Balladarez was told of the disciplinary action, he told Emery "this is bullshit" and threw his water bottle on the ground. (Docket Entry No. 27 at ¶¶ 16, 18). There is no evidence other than temporal proximity—which is insufficient to demonstrate pretext, *see Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 353, 77 Cal. Rptr. 3d 654, 675 (2008)—connecting the termination to Balladarez's protected activity.

Summary judgment is appropriate on the § 12940(h) retaliation claim only to the extent it is based on Balladarez's termination.  To the extent the § 12940(h) claim is based on the March 24 disciplinary action, summary judgment is denied.

**3.      Section 12940(n)**

Section 12940(n) makes it an unlawful employment practice "to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical [] disability or known medical condition."  "The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively." *Yphantides v. Cnty. of San Diego*, 660 F. Supp. 3d 935, 952 (S.D. Cal. 2023) (quoting *Scotch v. Art Institute of Cal.*, 173 Cal. App. 4th 986, 1013, 93 Cal. Rptr. 3d 338 (2009)).

"The employee must initiate the process unless the disability and resulting limitations are obvious." *Id.* "Once the interactive process is initiated, the employer's obligation to engage in the process in good faith is continuous." *Id.* (quoting *Scotch*, 173 Cal. App. 4th at 1013).

The trial court's "ultimate obligation" is to "isolate the cause of the breakdown." *Id.* (citing *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 261, 102 Cal.Rptr.2d 55 (2000)). An "employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." *Id.* (quoting *Jensen*, 85 Cal. App. 4th at 263) (cleaned up). "[T]he fact that an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability. If the employer is responsible for a later breakdown in the process, it may be held liable." *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 348, 299 Cal. Rptr. 3d 433, 453 (2022), *reh'g denied* (Oct. 6, 2022) (quoting *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal. App. 4th 952, 985, 83 Cal. Rptr. 3d 190, 219 (2008)) (cleaned up).

"The interactive process 'requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identifying an accommodation that allows the employee to perform the job effectively.' To prevail on a section 12940(n) claim, an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 800 (N.D. Cal. 2015) (quoting *Yeager v. Corr. Corp. of Am.*, 944 F.Supp.2d 913, 919 (E.D. Cal. 2013)). "[S]ection 12940(n) imposes liability only if a reasonable accommodation was possible." *Nadaf-Rahrov*, 166 Cal. App. 4th at 981.

Balladarez argues that Vitro failed to engage in a good-faith interactive process. Balladarez states in his declaration that when he returned to work after his injury, he met with Cuellar and Casey and told them he "needed a general maintenance assistant because [he] couldn't do the following tasks required of [his] job: climbing stairs, ladders, working under and over machinery, and lifting items in order to conduct [preventative maintenance inspection]'s." (Docket Entry No. 27 at ¶ 9). He states that Cuellar and Casey "refused to grant [him] a general maintenance technician, therefore setting [him] up for failure." (*Id.*). Instead, they told him that "they could only try to get a 'volunteer' for weekdays and no assistance on weekends," even though Balladarez regularly worked weekends. (*Id.*). Balladarez states that at the end of the meeting, Cuellar and Casey "had [him] sign [] two papers which they had filled out, one called a 'Reasonable Accommodation And Interactive Process Record' and the other a 'Temporary Modified Duty Agreement.'" (*Id.*). Balladarez states that the papers did not mention his request for a general maintenance technician to help him. (*Id.*).

On his "first couple days back," Balladarez states he "was able to get a 'volunteer' to help [him] with [his] duties." (*Id.* at ¶ 10). However, on the weekend after he returned to work, he had only a "co-worker, who did not and was not assigned to work with [him] or assist [him] due to [his] injury." (*Id.*). Balladarez was assigned a different co-worker the following night. (*Id.*).

This evidence raises a genuine factual dispute material to determining whether Vitro failed to engage in a good-faith interactive process. Balladarez has identified a reasonable accommodation that may have been available at the time of the interactive process—a general maintenance technician assigned to assist Balladarez in performing tasks he could not physically do. The evidence shows that Vitro took some steps to work with Balladarez to reach a reasonable accommodation that would allow Balladarez to do his job effectively, by assigning him volunteers

31

to help him perform physical tasks on the weekdays.  However, Vitro has not established that, as a matter of law, it did "everything in its power to find a reasonable accommodation," or that the interactive process "broke down" because Balladarez "failed to engage in discussions in good faith."

Summary judgment is denied on the § 12940(n) claim.

### 4.   Section 12940(k)

Section 12940(k) makes it an unlawful employment practice "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."   "Retaliation is included within the meaning of 'discrimination' for purposes of § 12940(k)."  *Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1098 (E.D. Cal. 2017).  To establish a § 12940(k) claim, the plaintiff must show he: (1) was subjected to discrimination, harassment, or retaliation; (2) the defendant failed to take all reasonable steps to prevent discrimination, harassment, or retaliation; and (3) this failure caused the plaintiff to suffer injury, damage, loss, or harm.  *Moss v. City & Cnty. of San Francisco*, No. 3:22-CV-01252-JSC, 2024 WL 406517, at *12 (N.D. Cal. Feb. 2, 2024).

Courts have identified the following nonexhaustive examples of "reasonable steps" available to remedy harassment, discrimination, or retaliation:

> affirmatively raising the subject of harassment, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under California law, and developing methods to sensitize all concerned . . . . Other reasonable steps an employer might take include the establishment and promulgation of antidiscrimination policies and the implementation of effective procedures to handle discrimination-related complaints and grievances.

*Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015).

A § 12940(k) claim is "essentially derivative of a discrimination [or retaliation] claim."  *Id.* Courts have held that when a plaintiff's discrimination or retaliation claim withstands summary

judgment, his § 12940(k) claim does as well.  *See, e.g.*, *Moss*, 2024 WL 406517, at *12; *Ravel*, 228 F. Supp. 3d at 1098–99; *Achal*, 114 F. Supp. 3d at 804–05; *Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008).

   As explained, Balladarez's retaliation claim under § 12940(h) withstands summary judgment.  It follows that Balladarez's § 12940(k) claim also withstands summary judgment.

### E.    Wrongful Termination in Violation of Public Policy

California recognizes a cause of action for wrongful discharge in violation of public policy. *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1114 (S.D. Cal. 2020).  "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm."  (quoting *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 144, 154, 176 Cal. Rptr. 3d 824 (2014)).  Terminating a whistleblower in violation of § 1102.5(b) gives rise to a cause of action for wrongful discharge in violation of public policy.  *Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913, 929, 180 Cal. Rptr. 3d 359, 372 (2014).  Terminating an employee because of a disability or the employee's protected activity, in violation of the FEHA, also amounts to wrongful discharge in violation of public policy.  *See Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1021 (E.D. Cal. 2011).

Because Balladarez's § 1102.5(b) claim withstands summary judgment, so does his claim for wrongful termination in violation of public policy.  *See id.*; *Erhart*, 612 F. Supp. 3d at 1114. However, to the extent Balladarez's claim is premised on the FEHA, summary judgment is granted.  As explained in Part III.D.2 above, the only discrimination or retaliation claim that

withstands summary judgment is the claim based on an allegedly retaliatory disciplinary action, not termination.

### F.      The Wage and Hour Claims

Vitro argues that the *Romero* class action settlement is *res judicata* to Balladarez's claims for failure to provide meal and rest periods, overtime compensation, and compensation for all hours worked.  (Docket Entry No. 23 at 21).  Balladarez responds that *res judicata* does not apply because this action was filed before *Romero*, the *Romero* settlement agreement did not include this case as one affected by the settlement, Balladarez's counsel in this action was not notified of the proposed *Romero* settlement, and Vitro did not seek a stay or consolidation of this action with *Romero*.  (Docket Entry No. 26 at 7–8).

"Under the doctrine of res judicata, a valid, final judgment on the merits is a bar to a subsequent action by parties or their privies on the same cause of action." *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 575, 117 Cal. Rptr. 3d 398, 409 (2010) (quotation marks and quoting reference omitted).  "Res judicata applies to a court-approved settlement agreement in a class action dismissed with prejudice." *Id.* at 578.  A defendant invoking *res judicata* must show: "(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the *same cause of action* as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding." *Id.* (quoting reference omitted).  "When the same claim or issue is litigated in two courts, the second court to reach judgment should give res judicata effect to the judgment of the first, regardless of the order in which the two actions were filed." *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985).

Each element of *res judicata* is satisfied here.  The *Romero* settlement has been approved and a final judgment has been entered.  (Docket Entry No. 23-2 at 162, 169).  The settlement

agreement released "any and all claims . . . of whatever kind or nature," including claims for failure to pay wages, failure to provide meal and rest periods, and failure to pay all wages due. (*Id.* at 131). Balladarez was a member of the *Romero* class and Vitro was the defendant. (Docket Entry No. 23-5 at 7). Balladarez received notice of the *Romero* settlement and accepted a $4,294.39 settlement payment. (*Id.* at 7, 19). The Ninth Circuit's decision in *Americana*, 754 F.2d at 1529, forecloses Balladarez's argument that *res judicata* does not apply because this action was filed before *Romero*. And Balladarez cites no authority in support of his other arguments that *res judicata* does not apply.

The court concludes that Balladarez's sixth, seventh, eighth, and ninth causes of action are barred by *res judicata.*

## IV. Conclusion

Vitro's motion for summary judgment is granted in part and denied in part. (Docket Entry No. 23). Summary judgment is granted on the following claims:

- The § 12940(a) disability discrimination claim;

- The § 12940(h) retaliation claim to the extent it is based on Balladarez's termination;

- The wrongful termination in violation of public policy claim only to the extent it is premised on the FEHA;

- The Labor Code claims for failure to provide meal and rest periods, pay overtime compensation, compensate for all hours worked, and waiting time penalties.

Summary judgment is otherwise denied. The following claims remain:

- The § 12940(h) retaliation claim based on the March 24, 2020 disciplinary action;

- The § 12940(n) claim;

- The § 12940(k) claim;

- The wrongful termination in violation of public policy claim to the extent it is premised on the § 1102.5(b) claim.

A scheduling conference is set for **July 26, 2024, at 1:30 p.m. Central Time**, by Zoom. Counsel can find the court's Zoom link on Judge Rosenthal's home page, at the bottom of the page, in the Interactive calendar link.  The parties must confer and submit a proposed scheduling and docket control order by **July 19, 2024**.

SIGNED on June 27, 2024, at Houston, Texas.

_____
        Lee H. Rosenthal
        United States District Judge